UNITED STATES *v.* HINTON & Co. (No. 3760)[1]
HINTON & Co. *v.* UNITED STATES (No. 3763)

---

[1] T. D. 47079.

United States Court of Customs and Patent Appeals, April 30, 1934

*Charles D. Lawrence*, Assistant Attorney General (*Daniel I. Auster* and *Ralph Folks*, special attorneys, of counsel), for the United States.

*Brown & Carter* (*Allan Brown* and *Fred J. Carter* of counsel) for importers.

[Oral argument April 6, 1934, by Mr. Folks and Mr. Brown]·

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges [2]

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain seed imported by the appellant, and described by the appraiser in his answers to protests as "teazle seed", was the subject of three entries at the port of New York, under the Tariff Act of 1930. This was classified by the collector, in each case, as garden and field seeds, not specially provided for, at 6 cents per pound, under paragraph 764 of said tariff act. The importer, in two protests covering the three entries, contended that the merchandise was free of duty under paragraph 1669 as drugs, or as crude vegetable substances under paragraph 1722, or as oil-bearing seeds and nuts under paragraph 1727 of said act. The protestant also had alternative

---

Hatfield, J., did not participate in this case.

claims that the merchandise was dutiable under paragraph 762 as sunflower seed, either directly or by similitude, or under paragraph 764 as canary seed, either directly or by similitude, or under paragraph 1558 as unenumerated unmanufactured articles. The claims for dutiability by similitude were made under paragraph 1559 of said act.

After hearing, the United States Customs Court held that the imported seeds should be classified as canary seeds, either directly or by similitude, under said paragraph 764, and sustained the protests in that respect.

Thereupon, the Government appealed, insisting that the classification of the collector was correct and should have been sustained, and the protests overruled. On its part, the importer filed a cross appeal, assigning as error that the trial court should have sustained its protest claiming the imported seeds to be free as drugs under said paragraph 1669, or as crude vegetable substances under paragraph 1722, or dutiable as not enumerated unmanufactured substances under said paragraph 1558.

On the trial, samples of merchandise were offered and received in evidence. It is made to appear from these samples and from the testimony of the witnesses, that the imported seeds are of two varieties. One of these is known as "golden pleasuere." This seed is rust-colored, and each elongated seed is about three thirty-seconds inch in length. The other seed, known as "teazle", is straw-colored, and about six thirty-seconds inch in length. The seeds are cleaned and ready for their uses.

The testimony shows that these seeds are imported and used by dealers for sale as a so-called "song restorer" for birds. The importer, a dealer in bird seed, testified that they were sold and used as a medicine and tonic for birds—not as an article of food, but as a tonic. According to this witness, the seed is never used for growing purposes and is never sold for a field or garden seed, and its sole use is for birds, not exclusively canaries, but for birds, generally. According to this witness, also, the seed has no aromatic odor, but does contain an oil which is beneficial to birds. It appears from the testimony of a witness, Frank D. McManus, that there is no aromatic odor attached to either variety of seed, but the golden pleasuere seed has a slightly pungent taste, when crushed.

It appears from the testimony that the plants from which these teazle and golden pleasuere seeds are produced grow wild, and are not cultivated as garden or field crops. One variety of teazle is cultivated to some extent for the purpose of procuring fuller's teazle, which is used to raise the nap of cloth. The record is not entirely satisfactory as to the method of the growing of these particular seeds, most of the information of the witnesses being derived from consulting cyclope-

dias and other works of reference. The scientific names of the varieties of plants from which these seeds are grown do not appear in the record.

The relevant portions of the paragraphs of the Tariff Act of 1930, are as follows:

PAR. 764. Other garden and field seeds: Beet (except sugar beet), 4 cents per pound; cabbage, 12 cents per pound; canary, 1 cent per pound; carrot, 4 cents per pound; cauliflower, 25 cents per pound; celery, 2 cents per pound; kale, 6 cents per pound; kohlrabi, 8 cents per pound; mangelwurzel, 4 cents per pound; mushroom spawn, 1 cent per pound; onion, 15 cents per pound; parsley, 2 cents per pound; parsnip, 4 cents per pound; pepper, 15 cents per pound; radish, 6 cents per pound; spinach, 1 cent per pound; tree and shrub, 8 cents per pound; turnip, 5 cents per pound; rutabaga, 5 cents per pound; flower, 6 cents per pound; all other garden and field seeds not specially provided for, 6 cents per pound: *Provided*, That the provisions for seeds in this schedule shall include such seeds whether used for planting or for other purposes.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned * * *.

PAR. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided*, That no article containing alcohol shall be admitted free of duty under this paragraph.

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

The importer, in its cross appeal, makes three contentions: First, that the seeds in question are free of duty as drugs under paragraph 1669, or as crude vegetable substances under paragraph 1722, or, alternatively, that they are dutiable as not enumerated unmanufactured articles under paragraph 1558. Other claims in the protest are not insisted upon, and the case will be determined on the issues as made by the parties here.

On two former occasions, this court has considered the dutiability of birdseeds similar to those here involved. In *Woodhull* v. *United States*, 15 Ct. Cust. Appls. 288, T.D. 42471, niger seed, used for bird feed, was imported, and was classified for duty under paragraph 762 of the Tariff Act of 1922, which paragraph was substantially the sam⌐

as paragraph 764 of the Tariff Act of 1930. The importer claimed the seed to be free of duty as a vegetable substance under paragraph 1622, which was identical with paragraph 1722 of the Tariff Act of 1930, or that the seed was dutiable as a not enumerated unmanufactured article under paragraph 1459 of the said Tariff Act of 1922. This court, after a careful analysis of the provisions of the various acts involved, held that these seeds had been properly classified by the collector as other garden and field seeds, and that the term "canary seed", as used in said paragraph 762, referred to the seed of the canary grass, *phalaris canariensis*, a plant cultivated for its seeds, and which was commonly used as bird feed. The court, in this case, called attention to the fact that the inclusion of the term "canary seed" in the same paragraph with garden and field seeds was a strong indication that the Congress was intending to include all seeds which were commonly used as bird feeds within this paragraph.

Again, in *Prunty Seed & Grain Co.* v. *United States*, 18 C.C.P.A. (Customs) 268, T.D. 44429, also under the Tariff Act of 1922, thistle seed, to be used as bird seed, was imported, and was classified under said paragraph 762, as all other garden and field seeds. The importer claimed it to be free of duty as oil-bearing seeds under paragraph 1626, or dutiable under said paragraph 762, as canary seeds by similarity of use, or dutiable as sunflower seed under paragraph 760, or as all other grass seeds under paragraph 761 of said act.

It was urged strenuously, in this latter case, that this court had not given adequate consideration in the *Woodhull* case to the claim for classification as canary seed. However, this court disposed of this suggestion with the following language:

As to appellant's contention that niger seeds are similar in use in the United States to canary seeds, and should be dutiable accordingly, the observation last above made as to the applicability of the similitude clause of paragraph 1460 is determinative of this question. Niger seeds are not canary seeds. They fall within the last provision of paragraph 762—"all other garden and field seeds not specially provided for"—and there is no basis for the application of the similitude clause of paragraph 1460.

The contention is made that as soon as proof was offered to show that the imported seeds were never used or sold in this country as garden or field seeds, the presumption of correctness attaching to the collector's classification fell, and the burden then shifted to the Government to prove that the imported seeds were garden or field seeds. This loses sight of the rule announced in the two cited cases, especially the *Woodhull* case. There we announced that, as a matter of law, it was the legislative intent to include seeds such as those here involved, within the provision for "other garden and field seeds," saying:

Importer's chief contention is that paragraph 762, headed "Other garden and field seeds" was meant to cover only such "seeds of the class generally intended

for planting in gardens and fields", and that the proviso was meant to prevent the fugitive or unusual use of such seeds, for purposes other than planting, to control their classification. The trouble with importer's position is that Congress left canary seeds in the paragraph, and, as we understand it, they are not of the class that are "intended for planting in gardens or fields", but are for bird food. Furthermore, regardless of what meaning we might be disposed to give to the proviso, under other circumstances, it certainly is broad and definite enough to apply to the seeds in controversy.

It was held by the court below, and argued here, that by the term "canary seed", used in said paragraph 764, is meant "all seeds used as food for canary birds." This has not in mind, however, our holdings in the cases cited, where we indicated that by "canary seed" was meant the seed of the canary grass. Certainly, also, it could not be held to be canary seed, by similitude, if it is designated by, and comes within, the language of said paragraph 764, "other garden and field seeds not specially provided for."

It is claimed that these seeds are, because of their use as a medicine and tonic for birds, crude drugs, such as are named in said paragraph 1669. However, on examination of this paragraph, it will be seen that only certain kinds of seeds are named therein, namely: "Seeds (aromatic, not garden seeds)" and "seeds of morbid growth." These kinds of seeds being specifically mentioned, it will be presumed that other kinds of seeds were not intended to be included therein.

The imported seeds are not aromatic and are not of morbid growth. The latter provision was, obviously, intended to include seeds resulting from a diseased condition, such as ergot, which is specially provided for. The former must come within the ordinary meaning of the word "aromatic", which these seeds fail to do.

Aromatic a. 1. Of, pert. to, or containing aroma; fragrant; spicy; strong-scented; odoriferous * * *.

Aroma. n. 2. Quality or principle of plants or other substances constituting their fragrance; agreeable odor; as, aroma of coffee.

Morbid 1. Not sound and healthful; induced by, or characteristic of, a diseased or abnormal condition; diseased; sickly; hence, abnormally or unnaturally susceptible to emotional impressions, esp. of a gloomy or unwholesome nature. (Webster's New International Dictionary, 1932.)

It is argued that the imported seeds are free of duty as crude vegetable substances, under said paragraph 1722. Were there, otherwise, substance to this claim, it could hardly be now considered an open question in this court. That claim was made in the *Woodhull* case, *supra*, and disposed of adversely to the claimant. No reason is apparent for coming to any different conclusion here.

Finally, the goods, being within the designation "garden and field seeds," cannot be "not enumerated" under said paragraph 1558.

The imported seeds were properly classified by the collector, and the judgment of the United States Customs Court is *reversed*.